ALBERT GOLDMAN *vs.* ISADORE DOFF ET AL.

Third Judicial District, Bridgeport, April Term, 1930.
WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

Argued April 10th—decided May 9th, 1930.

*Samuel M. Silver,* for the appellants (defendants).

*Walter J. Walsh,* for the appellee (plaintiff).

HAINES, J. Various claims for the correction of the finding were made by the defendant-appellants, and a considerable amount of testimony printed in the record, but none of these are pursued on appeal to this court, and the finding must stand as the final record of the established facts of the case. It thus appears that in April, 1927, the plaintiff and the defendant Isadore Doff were the owners of adjoining tracts of land fronting on Commerce Street in the city of New Haven. The plaintiff's land was about seventy-four feet front and lay south of the land of the defendant, the latter's tract having a frontage of about thirty-five feet. An old wooden building or shack, one story in height and without a cellar, and resting on wooden sills which in turn rested upon the ground, stood on the south side of the defendant's land. The parties were in dispute as to the exact location of the dividing line between their lands and resolved the dispute by a deed executed by the defendant to the plaintiff of a strip of land one foot in width on Commerce Street, thirty-two feet eleven inches deep and eight inches in width on the rear. Upon this strip of land stood the south wall of the shack, the remainder of the building being on the defendant's land. As part of this transaction, and thereafter on the same day, the plaintiff executed a lease for this strip to the defendant "for the purpose of and so that the one story . . . building now standing partly on the above described land and partly on the land next adjoining on the north may remain on the above described land for the term of and so long as said building in its entirety shall stand." The lease further provided as follows: "It is understood and agreed by and between the parties hereto that this lease shall cease and terminate when said building shall cease to stand on the above described land, or when any improvements or repairs are made on and to

the same in any way whatsoever as shall add to or increase its structural strength, or if the same shall be legally condemned, or if the condition and use thereof shall violate any laws or regulations of the city of New Haven, State of Connecticut, or of the United States. And when said lease shall so cease and terminate upon the happening of any one or more of the above mentioned events, said lessee for himself, his heirs, executors, administrators and assigns, covenants and agrees to remove the same and all the materials thereof from the above described land at his own expense. It is further understood and agreed that the rental therefor shall be one dollar per annum, payable in advance on the 23d day of April of each year during said term. . . . And it is further agreed, that if the rent shall remain unpaid thirty days after the same shall become payable as aforesaid, or if said lessee shall use the same for any purpose but that hereinbefore authorized, or make alterations therein without the consent of the lessor in writing, or shall commit waste on said premises, or injure the same, then this lease shall thereupon be terminated, and said lessor may at any time thereafter without any re-entry recover possession thereof in the manner prescribed by the statute relating to summary process, and all rights to any notice to quit possession is expressly waived by said lessee." Sometime after the lease was given, the defendant transferred the property to one Meadow who in turn transferred it to David Doff who is now the owner of record. The walls of the building in question were covered with corrugated iron, and the roof which was old and in bad condition and leaky, was of tar, and there was a twelve inch brick wall through the center of the building from front to rear, extending from the ground to the roof, upon which the rafters and roof rested. Most of the south half of the building had no

flooring except the ground and also had no ceiling, while on the north portion there was a floor and a wooden ceiling. Two sons of Isadore Doff conducted a fruit store in the building. In July and August, 1927, the defendant, without notice to or permission of the plaintiff, removed the brick partition wall entirely and substituted a metal girder which was itself supported by three iron lally columns, one at each end and one in the center. He covered the whole building, including the south wall which stood on the leased land, with a new four-ply asphalt roof with one hundred and forty-two gravel strips, put on the roof all around the building on the edges, to prevent tar from running off. A new concrete floor was laid in the entire building flush with the sills of the building. A wooden ceiling was put in the south half of the building to correspond with the one in the north half, and this ceiling ran along flush with the four walls of the building. Radical changes were also made in the front doors of the building, and electricity was put in, which together with the other changes referred to, amounted to more than $600. While these changes were being made, the plaintiff was absent from the city and State, but upon his return in August and the discovery of the nature of the changes which had been made, he remonstrated with the defendants but without avail. The rent called for by the lease has never been paid. The plaintiff desires possession of the leased premises to enable him to go forward with the erection of a building on his own land for which plans have already been drawn.

That clause of the lease reading, "this lease shall cease and terminate when said building shall cease to stand on the above described land, or when any improvements or repairs are made on and to the same in any manner whatsoever as shall add to or increase its

structural strength," was interpreted by the trial court to refer to the building as a whole and nɔt simply to the south wall thereof, and this conclusion is assigned as error. It is quite apparent that the parties intended the lease to continue only for such time as the building or shack then standing, should remain as then, usable, and the clause against strengthening the building was obviously intended to ensure that the life of the building should not be extended beyond the time that would naturally remain to it in its then condition. It is difficult to see any other reasonable object for the insertion of these provisions.

Without doing unwarranted violence to the language of the lease, we could not hold otherwise than with the trial court that the provision against the increase of the structural strength, referred to the entire building. Whether this is so, or whether the provisions relate to south wall only, as the defendants claim, becomes quite unimportant when we note the unattacked finding of the trial court that the changes and improvements referred to, did in fact strengthen not only the entire building but the south wall itself. This finding was excepted to, and though not pursued upon appeal, we may say that if it had been, the trial court's finding would stand for the reason that it was clearly supported by the testimony of competent and reliable witnesses who had examined the building, and though their conclusions were denied by witnesses for the defense, the trial court was entitled to resolve this conflict of testimony by accepting the statements of the former. Under such circumstances, we do not interfere with the finding of a trial court reasonably arrived at. What has been said disposes of the first three assignments of error. Since the lease had reference to changes in the building as a whole, the fifth, sixth, seventh and tenth assignments of error become unimportant and need not

be discussed. The only other assignment which could in any event change the result reached by the trial court, is that of laches. In support of this claim the defendant argues that the plaintiff acquiesced in the remodeling and the changes in the building, and thus waived the restraining provisions of the lease. It is said that "plaintiff was entirely willing that such actual construction and improvements should proceed." Unfortunately for this contention the facts found do not support the premise upon which it is based. The court found that all these changes were made while the plaintiff was absent from the city and the State, and that when he returned and discovered what had been done, he protested to the defendants but without avail. What might have been the result if the plaintiff had stood by without protest, knowing the changes were being made, we do not need to consider. We can find no error by the trial court in determining the facts or reaching a conclusion.

There is no error.

. In this opinion the other judges concurred.